**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KELBER COACHING, LLC,**<br>Plaintiff,<br>v.<br>**GANTRY VIEW SCHOOL, LLC,**<br>Defendant. | Civil Action No. 1:26-cv-7545<br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Kelber Coaching, LLC ("Gantry Kids"), by and through its undersigned counsel, pursuant to Federal Trademark Law, commonly referred to as the Lanham Act, 15 U.S.C. § 1051 *et seq*., and New York common law, hereby asserts claims of federal trademark infringement and unfair competition and common law trademark infringement and unfair competition against Gantry View School, LLC ("Gantry View").

## PRELIMINARY STATEMENT

1. Gantry Kids seeks (1) injunctive relief against Gantry View's unauthorized use and exploitation of Gantry Kids' trademark rights; and (2) damages arising from Gantry View's acts of trademark infringement and unfair practices in violation of the Lanham Act and New York common law.

## PARTIES

2. Gantry Kids is a limited liability company organized under the laws of New York with a principal place of business at 10-19 46th Rd., Long Island City, New York 11101.

3. Upon information and belief, Gantry View is a limited liability company organized under the laws of New York with a principal address at 5-36 50th Ave., Long Island City, New York 11101.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Gantry Kids' federal trademark infringement and unfair competition claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and jurisdiction over the related unfair competition claim pursuant to 28 U.S.C. § 1338(b).

5. This Court has supplemental jurisdiction over Gantry Kids' related New York common-law claims pursuant to 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over Gantry View because its principal place of business is located within this District, it conducts business within this District, and the acts of infringement alleged herein occurred within this District.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Gantry View resides within this District for venue purposes and a substantial part of the events giving rise to Gantry Kids' claims occurred within this District.

## FACTS COMMON TO ALL COUNTS

### GANTRY KIDS' BUSINESS

8. In 2013, Michele Kelber founded Gantry Kids to create opportunities for kids and teens to learn important life skills. Gantry Kids uses fitness, amongst other things, to teach children the skills needed to become well-adjusted, empathetic, and successful adults.

9. Since 2013, Gantry Kids has continuously and substantially exclusively used the marks GANTRY KIDS and GANTRY KIDS & TEENS in connection with its advertising and provision of recreation program services for kids. Gantry Kids advertises these services through its website, www.gantrykids.com, and various social media accounts (e.g., Instagram, https://www.instagram.com/gantrykids/; Facebook, https://www.facebook.com/gantrykids/).

10. Gantry Kids uses GANTRY to evoke themes of strength and growth, consistent with its mission of developing children's physical abilities, confidence, and leadership skills. For example, Gantry Kids' slogan, "Gantry Kids & Teens: Building Tomorrow's Leaders Today," reflects this philosophy. A screenshot of Gantry Kids' website logo and slogan, accessed and printed on September 23, 2026, is shown below.

11. Gantry Kids offers and advertises on its website various classes such as "Pre-Kids," "Kids," "Pre-Teens & Teens," and "Strength Training for Athletes." Specifically, the "Kids Classes for kids ages 6-10" "help kids develop physical abilities, self-confidence, and strong social skills," and the "Pre-Teens & Teens" classes are "an excellent way to develop physical competence while giving teenagers a strong sense of self-worth and accomplishment."

12. Gantry Kids also offers and advertises various programs on its website, including "After School," "School Recess Camp," "Summer Camp," and "Teen Summer Camp." Its After School program provides children with opportunities for free play, social interaction, and coach-led activities, as well as pickup from local Long Island City schools, including Hunters Point Elementary (P.S. 384), Robert F. Wagner, Jr. School (P.S. 78), and Gantry View School (GVS). These services demonstrate the close relationship between Gantry Kids' recreational programs and the local school community. A screenshot from the "After School" section of Gantry Kids' website, accessed and printed on September 23, 2026, is shown below.

**THE PERFECT PROGRAM FOR BUSY KIDS, DELIVERED AFTER SCHOOL MONDAY - FRIDAY.**

**Our After School Program is a great solution for post-academics**, giving kids time away from home, free play, social interaction, and coach-led activities while providing parents with hours of trusted high quality care. We value outdoor time, physical activity, community building, and independent free play for kids to grow. It's our prescription to "Building Tomorrow's Leaders Today!"

**THE ESSENTIALS:**

- ✓ pick up from PS 384, PS 78, GVS & Local bus stops for out-of-area schools
- ✓ parent pick up between 5-5:30 pm
- ✓ walking bus drops your athlete off at home by 6 pm FOR FREE*
- ✓ daily outdoor time, free play, snack time, & organized activity
- ✓ time to start homework, let us know so a coach can oversee
- ✓ great for K-4

**Anywhere from the waterfront to Court Square area*

**OUR COACH-LED ACTIVITIES*:**

- ✓ Monday & Friday - Survey of Sports
- ✓ Tuesday & Thursday - Fitness Class
- ✓ Wednesday - Community Building

**Scroll down to get more info!*

**AT THE GYM:**

- ✓ rope & ring swings, obstacle courses, building forts, climbing the rig
- ✓ art supplies, Legos, board games, books
- ✓ sports equipment, skateboards, bikes, scooters, tennis rackets, & more
- ✓ time for snacks, time for homework, coach-led daily activity

13. Gantry Kids' "School Recess Camp" affords "kids an outlet for fun, physical activity, learning, and socialization when school isn't in session." A screenshot from the "School Recess Camp" section of Gantry Kids' website, accessed and printed on September 23, 2026, is shown below.

**FULL-DAY ENRICHMENT DURING EVERY SCHOOL HOLIDAY AND ALL SUMMER LONG, KEEPING KIDS ENGAGED AND LEARNING.**

**We know how crazy school holidays can be,** whether they're a half-day, a single day, or an entire week long

**We created our Holiday Enrichment to help** giving kids an outlet for fun, physical activity, learning, and socialization when school isn't in session. Just like summer camp, we bike & scoot as part of our fitness & field trip-based camp! Weather permitting of course.

Biking and scooting requirements.



**GANTRY KIDS' REGISTERED TRADEMARKS**

14. Gantry Kids owns all right, title, and interest in U.S. Trademark Registration No. 7,620,203 for GANTRY KIDS for "Recreation programs for kids, namely, classes, after-school programs, school year camps, summer camps, and community events in the nature of fitness events in the field of body and mind wellness" in International Class 041 (the "'203 Registration"). The '203 Registration was issued by the United States Patent and Trademark Office ("USPTO") on December 24, 2024, reflects a claimed date of first use of July 31, 2013, and includes a disclaimer of "KIDS." A true and correct copy of the Certificate of Registration for the '203 Registration and its status is attached hereto as **Exhibit A**.

15. Gantry Kids owns all right, title, and interest in U.S. Trademark Registration No. 7,620,202 for GANTRY KIDS & TEENS for "Recreation programs for kids, namely, classes, after-school programs, school year camps, summer camps, and community events in the nature of fitness events in the field of body and mind wellness" in International Class 041 (the "'202 Registration"). The '202 Registration was issued by the USPTO on December 24, 2024, reflects a claimed date of first use of July 31, 2013, and includes a disclaimer of "KIDS & TEENS." A true and correct copy of the Certificate of Registration for the '202 Registration and its status is attached hereto as **Exhibit B**. Pursuant to 15 U.S.C. §§ 1057(b) and 1115(a), the '202 and '203 Registrations constitute prima facie evidence of the validity of the registered marks, Gantry Kids' ownership thereof, and its exclusive right to use the registered marks in commerce in connection with the services identified in the respective registrations, subject to applicable conditions, limitations, and defenses.

16. In addition, Gantry Kids owns common law trademark rights associated with the marks GANTRY KIDS and GANTRY KIDS & TEENS in connection with recreational services developed for and marketed to kids and teenagers.

17. Gantry Kids' federally registered GANTRY KIDS and GANTRY KIDS & TEENS marks and its common law trademark rights in "Gantry Kids" and "Gantry Kids & Teens" are collectively referred to herein as the "GANTRY KIDS Marks."

**GANTRY VIEW'S BUSINESS**

18. Upon information and belief, Gantry View is an independent K-5 school located at 5-36 50th Ave., Long Island City, New York 11101.

19. Gantry View's website may be found on the internet at https://www.gantryviewschool.com/. A true and correct screenshot of its website logo, accessed and printed on September 23, 2026, featuring a stylized gantry design, is shown below.

GANTRY VIEW SCHOOL

20. According to Gantry View's "Our History" section of its website, "Gantry View School continues the work of Queens Paideia School [QPS], which was founded by educators and parents who were concerned that traditional classrooms, with their high student-teacher ratios and limited methodology, could not accommodate the needs or consider the true potential of most children. Gantry View School is a destination for parents who seek academic rigor, emphasis on the 'whole child,' and greater involvement in their children's education."

21. Gantry View's website further states: "[i]n spring 2020, Bunny Hill's Leah Tong and QPS founders Dr. Francis Mechner and Karyn Slutsky explored the idea of creating a new school in LIC that would embrace their shared passion for educational theory and current research

on how children learn best. These exchanges engendered warmth and mutual regard, which, when expanded to include QPS's formidable team of Learning Managers, led to the formation of Gantry View." *Id.*

22. According to its website, Gantry View School was formed by educators associated with QPS and others to continue QPS's educational work.

23. According to records maintained by the New York Department of State, Gantry View was originally organized as ARC HILL LLC on March 31, 2021. On August 27, 2021, ARC HILL LLC filed a Certificate of Assumed Name and subsequently changed its legal name to GANTRY VIEW SCHOOL, LLC on May 11, 2022.

24. According to publicly available ICANN domain-registration records, gantryviewschool.com was registered on June 10, 2021.

25. According to the FAQ section of Gantry View's website, it has a physical education program wherein "Students participate in Movement Education, which involves strength-building, stretching, and cooperative games. Movement education is about gaining greater awareness of one's physical abilities and the role that beneficial movement can play over the course of a lifetime."

26. Besides academics, Gantry View also offers "After School" and "Summer Camp" programs. Gantry View's services, namely, academics, after-school programs, and summer camps, are collectively referred to herein as the "Infringing Services."

27. For example, Gantry View's February–June 2026 After School Enrichment brochure advertises various physical activities, including basketball, soccer, break dancing, and K-pop dancing. A true and correct copy of the brochure, accessed and printed on October 2, 2026, is attached hereto as **Exhibit C**.

28. The Sample Daily Schedule of Gantry View's Summer Camp 2026 identifies athletic activities, including basketball, soccer, pickleball, gymnastics, gym games, and wall climbing. A true and correct copy of Gantry View's Summer Camp 2026 advertisement, accessed and printed on October 2, 2026, is attached hereto as **<u>Exhibit D</u>**.

29. Gantry View's corresponding weekly schedule further demonstrates its emphasis on sports, identifying basketball, soccer, pickleball, and gymnastics among its scheduled activities. A true and correct copy of the weekly schedule is also included in Exhibit D.

30. Upon information and belief, Gantry View commonly uses the initials "GVS" as a substitute or shorthand for "Gantry View School." A true and correct screenshot of Gantry View's website including the use of "GVS," accessed and printed on September 23, 2026, is shown below.




**GANTRY VIEW'S UNLAWFUL ACTIVITY**

31. Upon information and belief, in 2021, the entity now known as Gantry View School, LLC adopted the name GANTRY VIEW SCHOOL. Karyn Slutsky, one of the individuals involved in forming Gantry View, had been familiar with Gantry Kids and its services since at least 2016, as described below.

32. Upon information and belief, following its adoption of GANTRY VIEW SCHOOL, Gantry View has used that mark, a confusingly similar variation of the GANTRY KIDS Marks, in

connection with advertising and rendering the Infringing Services. Specifically, both GANTRY VIEW SCHOOL and the GANTRY KIDS Marks include the same first or leading term, "Gantry," and consumers often focus on the first term in a service mark, thereby creating a similar overall commercial impression. This confusing similarity is strengthened by the fact that consumers often pay less attention to descriptive terms such as "school" and "kids" when comparing marks.

33. The relationship between Gantry Kids and individuals involved in forming Gantry View predates the adoption of the GANTRY VIEW SCHOOL name. On October 21, 2016, Deanna Gibaldi, on behalf of Gantry Kids, contacted Karyn Slutsky, then director of Queens Paideia School, about Gantry Kids' enrichment or physical education programs. Ms. Slutsky responded and requested further information. In June 2021, Gantry Kids provided QPS with a written proposal for an after-school fitness program. On June 16, 2021, William Wu, on behalf of QPS, emailed Michele Kelber to acknowledge receipt of the proposal and copied Ms. Slutsky and Mengyin ("Leah") Tong, now Gantry View's director. A true and correct copy of the written proposal is attached hereto as **Exhibit E**.

34. On March 22, 2024, Gantry Kids, through the undersigned counsel, transmitted a cease-and-desist letter via email to Ms. Tong, Director of Gantry View School, asserting in pertinent part:

> Recently, it has come to our client's attention that Gantry View School, LLC ("Gantry View") has adopted and started using a Gantry + Kids variation of its name, for example, @gantryviewschoolkids on Instagram, in connection with its rendering and/or advertising of related and/or overlapping services vis-à-vis Gantry Kids such as its "after school (including 'rooftop playground/GYM') and summer camp."

A true and correct copy of Gantry Kids' letter dated March 22, 2024 (the "March 22nd Letter") is attached hereto as **Exhibit F**. The March 22nd Letter further demanded that Gantry View discontinue using any mark, name, or indicator of source incorporating or confusingly similar to

GANTRY KIDS, including any GANTRY + KIDS variation, and expressly reserved all of Gantry Kids' rights, remedies, and causes of action.

35. The March 22nd Letter also placed Gantry View on notice of instances of consumer confusion between the GANTRY KIDS Marks and Gantry View. Specifically, the letter stated:

> Moreover, our client is aware of several instances wherein the relevant public mistakenly contacted Gantry Kids regarding Gantry View; Gantry View and/or its students' parents have included Gantry Kids in email correspondence; kids have been dropped off at the wrong location; and Gantry Kids has been tagged on third party social media posts intended to tag Gantry View School, etc. In our opinion, such instances confirm that confusion among the relevant public at our client's expense is not only likely but is, in fact, occurring as a direct consequence of Gantry View's actions.

36. On March 26, 2024, Gantry View transmitted an email from Ms. Tong to the undersigned counsel confirming that it had "immediately removed the word" from its Instagram account and would "refrain from using it going forward." A true and correct copy of Gantry View's email dated March 26, 2024, is attached hereto as **Exhibit G**.

37. Although Gantry View discontinued its use of the GANTRY + KIDS variation on Instagram, reported confusion between the parties continued. Accordingly, on November 27, 2024, Gantry Kids, through the undersigned counsel, transmitted a second cease-and-desist letter to Ms. Tong expressly objecting to Gantry View's continued use of GANTRY VIEW SCHOOL and GVS and asserting, in pertinent part:

> We appreciate the steps GVS took to mitigate confusion at that time; however, the confusion between GVS and Gantry Kids has not subsided. Instead, it has increased in frequency and annoyance. For example, there have been several instances of consumer-to-business confusion wherein individuals speaking to Gantry Kids but referring to GVS have made statements such as "our friend's kids go to school there," "our child used to take breakdancing at 'the other gantry school,'" "we thought you bussed the kids for afterschool," etc. and teachers have even attempted to hand off GVS afterschool children to Gantry Kids at pick up. In addition, there have been several instances of business-to-business confusion, such as new organizations networking with Gantry Kids but then saying Gantry View School on calls, in-person introductions to new businesses asking Gantry Kids about its second "location" on 50th Avenue, etc.

> . . . .
>
> Whereas we were previously primarily concerned that GVS was intentionally trading on Gantry Kids' considerable goodwill and reputation, we are now mainly concerned that GVS's continued use of "Gantry View School" and/or "GVS" will amass such recognition amongst the relevant public that Gantry Kids' services will become associated in the minds of consumers with GVS (i.e., GVS will swallow up Gantry Kids). Of course, GVS cannot control the public's use of GVS; however, but for GVS's adoption and use of "Gantry View School" and "GVS" with the full knowledge of Gantry Kids, this problem would not exist.

A true and correct copy of Gantry Kids' letter dated November 27, 2024 (the "November 27th Letter") is attached hereto as **Exhibit H**. In addition, the November 27th Letter asserted one or more violations of U.S. trademark law as follows:

> As such, it is our opinion that GVS's continued use of "Gantry View School" and/or "GVS," which is commonly understood to mean "Gantry View School," in connection with its services is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association between Gantry Kids and GVS or to confuse consumers as to the origin, sponsorship, or approval of GVS's services by Gantry Kids, all in violation of Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a), as well as common law trademark infringement, which may entitle Gantry Kids to injunctive relief. In fact, such confusion is not only likely; it is actual, further demonstrating the ongoing infringement of Gantry Kids' trademarks.

Ex. H. Notwithstanding the above-referenced violations of trademark law, Gantry Kids sought to resolve the matter amicably; however, to do so, "GVS must discontinue using any mark, name, or indicator of source that incorporates or is confusingly similar to GANTRY KIDS and/or GANTRY KIDS & TEENS, including, but not limited to, 'Gantry View School' and 'GVS' and do so within a mutually agreeable amount of time." *Id.*

38. The November 27th Letter requested a response from Gantry View by December 13, 2024; however, no such response was received.

39. On December 17, 2024, Gantry Kids, through the undersigned counsel, transmitted a follow-up letter to Ms. Tong requesting a response by no later than January 3, 2025. A true and

correct copy of Gantry Kids' letter dated December 17, 2024 (the "December 17th Letter") is attached hereto as **Exhibit I**.

40. On December 24, 2024, Gantry Kids, through the undersigned counsel, transmitted an email to Ms. Tong notifying her that the USPTO had granted U.S. Registration No. 7,620,203 for GANTRY KIDS and U.S. Registration No. 7,620,202 for GANTRY KIDS & TEENS and providing Ms. Tong with copies of both. A true and correct copy of Gantry Kids' email dated December 24, 2024 (the "December 24th Email") is attached hereto as **Exhibit J**. As Gantry Kids had previously stated in the November 27th Letter:

> Last, please note the United States Patent and Trademark Office will register Gantry Kids' U.S. Trademark Application Serial Nos. 98385150 and 98385143 for GANTRY KIDS and GANTRY KIDS & TEENS, respectively, in 8-10 weeks. At that time, if GVS has disregarded our requests and/or is still using "Gantry View School" and/or "GVS," we will amend our claims to include violations, amongst other things, of Gantry Kids' federally registered trademarks, which may further entitle our client to its damages and/or GVS's profits separate and apart from any injunctive relief.

41. On January 10, 2025, Gantry View responded to Gantry Kids through its counsel. A true and correct copy of Gantry View's January 10, 2025, letter (the "January 10th Letter") is attached hereto as **Exhibit K**. Gantry View asserted that "the significance of the term 'Gantry' in the School's legal name and Kelber's assumed name/service offering is derived from a geographic location: Gantry Plaza State Park ('Gantry Park'), a New York State Park located in Long Island City, Queens." Ex. K. Gantry View likewise asserted, "[h]ere, the School's name is a literal description of the services it provides as a traditional private day school located proximate to a 'view' of Gantry Park." *Id.* Gantry View concluded by stating:

> While it's claimed in the Letters that there are instances of alleged actual confusion between the School and Kelber, to claim that they are the result of the School's failures or actions related to the School's use of the name "Gantry" is a bride *[sic]* way too far and aside from the common use of the name of Gantry Park by business in the neighborhood, *any confusion may be a result of* Kelber's failure to effectively

> distinguish its business and marks, *the size of the School's student population and its impact in the Long Island City community*.

Ex. K (emphasis added). Ultimately, Gantry View refused to stop using "Gantry" or "GVS," *see* Ex. K, and, upon information and belief, such use on the part of Gantry View is ongoing, at least at the time of filing this Complaint.

42. On January 15, 2025, Gantry Kids, through the undersigned counsel, transmitted a further letter to Gantry View's counsel reiterating its objections, emphasizing the parties' overlapping after-school programs and summer camps, and disputing Gantry View's geographic-descriptiveness and fair-use arguments (the "January 15th Letter"). A true and correct copy of the January 15th Letter, redacted for privacy, is attached hereto as **Exhibit L**. The January 15th Letter also reiterated Gantry Kids' concerns regarding reverse confusion, maintained its demand that Gantry View change its name, and provided an additional example of misdirected correspondence.

43. On January 16, 2025, counsel for the parties engaged in a short telephone conference to discuss the parties' respective positions. No agreement was reached.

**ACTUAL CONFUSION**

44. Since at least 2023, numerous instances of actual consumer confusion have occurred between Gantry Kids and Gantry View, both before and after Gantry Kids' formal objections to Gantry View's use of GANTRY VIEW SCHOOL and GVS. Three illustrative examples are included below.

45. First, on October 5, 2023, in an email from Christine M. Britton, Founding Principal, P.S. 384 Hunters Point Elementary, to Gantry Kids and Gantry View School, Ms. Britton wrote:

> Yesterday we had another perfect storm of events. Two students were sent to the incorrect after school program, both of which has Gantry, both named [the same first name]. We double checked our systems and also communicated with our team

> to ensure that students are lead to the correct area. I think there was some confusion because it was one student's first day.

A true and correct copy of Ms. Britton's email, redacted for privacy, is attached hereto as **Exhibit M**.

46. Second, on June 20, 2025, in an email from a child's parent to Gantry Kids, with the subject "[child] today," the parent wrote, "Hi Michele, Can you give me a call when you can. [Our child] ended up at Gantry view today and trying to figure out what happened. Can you call me at [number] as soon as you can." A true and correct copy of this email, redacted for privacy, is attached hereto as **Exhibit N**.

47. Third, on May 11, 2026, in an email from a parent of two children to Gantry Kids, with the subject "Inquiry About Summer Camp Availability – August 2026 – [Children's names]," the parent wrote, "Dear Gantry Kids & Teens School Admissions Team, I am interested in enrolling my two children, ages 5 ([Child's name]) and 6 ([Child's name]) in the Gantry View School Summer Camp for the weeks of August 17–21 and August 24–28, 2026." After Gantry Kids asked for clarification, the parent wrote, "I am actually interested in Gantry View School. Could you please provide me with an email address where I can contact the right department or person?" A true and correct copy of this email, redacted for privacy, is attached hereto as **Exhibit O**.

48. The three illustrative examples included above demonstrate both confusion among prospective purchasers and confusion during the actual delivery of competing after-school services.

**GANTRY VIEW'S U.S. APPLICATION SERIAL NO. 99542278 FOR GANTRY VIEW SCHOOL**

49. On December 11, 2025, Mengyin Tong filed U.S. Trademark Application Serial No. 99542278 seeking registration of GANTRY VIEW SCHOOL for various Class 041 services, including summer camps and after-school educational programs (the "'278 Application"). The application identifies September 1, 2022, as the alleged first-use and first-use-in-commerce dates.

Ms. Tong filed the application well after Gantry View had received Gantry Kids' written objections and notice of actual confusion. A true and correct copy of the '278 Application is attached hereto as **Exhibit P**.

50. On April 22, 2026, the USPTO issued a nonfinal Office Action refusing registration under Section 2(d) of the Lanham Act based, in pertinent part, on Gantry Kids' '202 and '203 Registrations (the "April 22nd Office Action"). In particular, the Examining Attorney found that the parties' marks conveyed similar commercial impressions and that their respective services were identical in part with respect to summer camps and overlapping with respect to after-school programs. A true and correct copy of the April 22nd Office Action is attached hereto as **Exhibit Q**.

51. On July 22, 2026, the applicant responded to the Office Action, arguing, among other things, that GANTRY was geographically descriptive and entitled to a narrow scope of trademark protection. A true and correct copy of the applicant's response is attached hereto as **Exhibit R**. The Examining Attorney subsequently withdrew the refusal following an amendment disclaiming exclusive rights to GANTRY and SCHOOL apart from the mark as shown. On August 20, 2026, the Examining Attorney approved the application for publication.

52. The August 20, 2026, approval for publication was subsequently withdrawn, and on October 23, 2026, the Examining Attorney issued a nonfinal Office Action requiring amendment of the identification of services. As of the filing of this Complaint, the '278 Application remains pending. A true and correct copy of the nonfinal Office Action is attached hereto as **Exhibit S**.

**FIRST CAUSE OF ACTION**

**(Federal Trademark Infringement – Ordinary and Reverse Confusion, 15 U.S.C. § 1114)**

53. Gantry Kids realleges and incorporates by reference all preceding allegations as if fully set forth herein.

54. Gantry Kids owns the ’202 and ’203 Registrations for GANTRY KIDS & TEENS and GANTRY KIDS, respectively. Gantry Kids has continuously used these marks in commerce since 2013 in connection with children’s recreational programs, including classes, after-school programs, school-year camps, and summer camps.

55. Despite its prior knowledge of Gantry Kids, the GANTRY KIDS Marks, and the services offered thereunder, Gantry View adopted and continues to use GANTRY VIEW SCHOOL in commerce, without Gantry Kids’ authorization or consent, in connection with the advertising, promotion, and rendering of the Infringing Services. Gantry View also uses GVS as an abbreviation for GANTRY VIEW SCHOOL in connection with its advertising, promotion, and rendering of the Infringing Services.

56. The parties’ respective marks share the identical leading term GANTRY and, when considered in their entireties, convey sufficiently similar commercial impressions to create a likelihood of consumer confusion, mistake, or deception. This similarity is compounded by the parties’ use of their respective marks for closely related and directly overlapping services directed to the same consumers.

57. Specifically, both parties offer after-school programs and summer camps directed toward children and their parents. The parties’ respective services overlap not merely in their descriptions, but in the marketplace, including their provision of after-school services to children attending the same local public schools.

58. Gantry View's use of GANTRY VIEW SCHOOL has caused actual consumer confusion, including instances in which children were sent to the incorrect after-school program, and a prospective customer contacted Gantry Kids while attempting to enroll children in Gantry View's summer camp, as more particularly alleged above.

59. Gantry View's unauthorized use of GANTRY VIEW SCHOOL is likely to cause ordinary confusion by leading consumers to believe that Gantry View's services originate with, are sponsored or approved by, or are otherwise affiliated with Gantry Kids. Additionally, given the parties' overlapping services, overlapping customer base, and Gantry View's own representations concerning its student population and impact within the Long Island City community, Gantry View's continued use of its mark creates a likelihood of reverse confusion whereby consumers may mistakenly believe that Gantry Kids' services originate with, are sponsored or approved by, or are otherwise affiliated with Gantry View.

60. Gantry View adopted its mark with prior knowledge of Gantry Kids and subsequently received written notice of Gantry Kids' objections and actual instances of confusion.

61. Notwithstanding such knowledge and notice, Gantry View has continued to use GANTRY VIEW SCHOOL in connection with the Infringing Services. In addition, its director, Mengyin Tong, individually applied for federal registration of that mark for services directly overlapping those identified in Gantry Kids' registrations.

62. Accordingly, Gantry View's continued conduct, under the circumstances described herein, constitutes knowing and willful infringement.

63. As a direct and proximate result of Gantry View's conduct, Gantry Kids has experienced actual marketplace confusion and interference with the identification and delivery of its services. Gantry View's continued use of its mark threatens further consumer confusion and

injury to Gantry Kids' business reputation, goodwill, and ability to maintain control over the identity of its services.

64. Unless enjoined, Gantry View's continued infringement is likely to cause further irreparable injury to Gantry Kids and the goodwill associated with the GANTRY KIDS Marks, for which monetary relief alone would be inadequate.

65. Gantry Kids seeks injunctive relief pursuant to 15 U.S.C. § 1116, together with such damages, profits, costs, and other monetary relief as may be established and awarded pursuant to 15 U.S.C. § 1117. Given Gantry View's prior knowledge of the GANTRY KIDS Marks, its continued use of GANTRY VIEW SCHOOL despite repeated formal objections and documented instances of actual confusion, and the circumstances described herein, this is an exceptional case under 15 U.S.C. § 1117(a), warranting an award of reasonable attorney's fees.

## SECOND CAUSE OF ACTION

**(Federal Unfair Competition, 15 U.S.C. § 1125(a))**

66. Gantry Kids realleges and incorporates by reference all preceding allegations as if fully set forth herein.

67. Since 2013, Gantry Kids has continuously used the GANTRY KIDS Marks in commerce in connection with its recreational programs for children and teenagers, including classes, after-school programs, school-year camps, and summer camps. Through such use, Gantry Kids acquired common-law trademark rights in the GANTRY KIDS Marks well before Gantry View adopted GANTRY VIEW SCHOOL and before Gantry Kids obtained its federal trademark registrations.

68. Despite its prior knowledge of Gantry Kids, its marks, and the services offered thereunder, Gantry View adopted and continues to use GANTRY VIEW SCHOOL in commerce,

without Gantry Kids' authorization or consent, in connection with the advertising, promotion, and rendering of the Infringing Services.

69. Gantry View's unauthorized use of GANTRY VIEW SCHOOL is likely to cause ordinary and reverse confusion concerning the origin, sponsorship, approval, affiliation, connection, or association of the parties' respective services. Such likelihood of confusion is supported by the similarity of the parties' marks, their overlapping services, overlapping customer base, and the documented instances of actual confusion alleged herein.

70. Notwithstanding its knowledge of Gantry Kids' prior trademark rights, formal objections, and instances of actual confusion, Gantry View has continued using GANTRY VIEW SCHOOL and GVS in connection with the Infringing Services. Such conduct constitutes unfair competition and false association in violation of 15 U.S.C. § 1125(a)(1)(A).

71. As a direct and proximate result of Gantry View's unlawful conduct, Gantry Kids has experienced marketplace confusion and injury to its ability to identify and distinguish its services. Unless enjoined, such conduct threatens further injury to Gantry Kids' business reputation and goodwill, for which monetary relief alone would be inadequate.

72. Gantry Kids seeks injunctive relief pursuant to 15 U.S.C. § 1116 and such damages, profits, costs, and other monetary relief as may be established and awarded pursuant to 15 U.S.C. § 1117. This is an exceptional case under 15 U.S.C. § 1117(a) and warrants an award of reasonable attorney's fees.

## THIRD CAUSE OF ACTION

**(Common Law Trademark Infringement and Unfair Competition)**

73. Gantry Kids realleges and incorporates by reference all preceding allegations as if fully set forth herein.

74. Through its continuous use and promotion of the GANTRY KIDS Marks in New York since 2013, Gantry Kids has acquired protectable common-law trademark rights in connection with its recreational programs for children and teenagers, including classes, after-school programs, school-year camps, and summer camps.

75. Gantry View adopted and continues to use GANTRY VIEW SCHOOL and GVS in connection with closely related and directly overlapping services despite its prior knowledge of Gantry Kids, the GANTRY KIDS Marks, and the services offered thereunder. Such use is likely to cause consumer confusion concerning the origin, sponsorship, approval, affiliation, connection, or association of the parties' respective services and has resulted in the instances of actual confusion alleged herein.

76. Gantry View adopted GANTRY VIEW SCHOOL with knowledge of Gantry Kids, as demonstrated by Gantry Kids' prior dealings with individuals involved in Gantry View's formation. Moreover, notwithstanding its subsequent receipt of formal objections and notice of actual confusion, Gantry View has continued using GANTRY VIEW SCHOOL and GVS in connection with the Infringing Services. Under the circumstances described herein, Gantry View's conduct constitutes bad-faith misappropriation of Gantry Kids' trademark rights and goodwill.

77. Gantry View's foregoing conduct constitutes trademark infringement and unfair competition under New York common law and has caused actual marketplace confusion and injury to Gantry Kids' ability to identify and distinguish its services.

78. Unless enjoined, Gantry View's continued unlawful conduct threatens further injury to Gantry Kids' business reputation and goodwill, for which monetary relief alone would be inadequate. Gantry Kids seeks injunctive relief, damages to the extent established, and such other relief as may be available under New York common law.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of Gantry View's unlawful activities as alleged in this Complaint, Gantry Kids respectfully requests that this Court:

A. Permanently enjoin Gantry View and its officers, directors, employees, agents, representatives, successors, assigns, and all persons acting in concert or participation with it from (i) using GANTRY VIEW SCHOOL or any other mark, trade name, or designation confusingly similar to the GANTRY KIDS Marks in connection with the Infringing Services; and (ii) continuing to use GVS as an abbreviation, substitute, or continuation of GANTRY VIEW SCHOOL to identify, advertise, or promote its services;

B. In the alternative, if the Court declines to grant the full injunctive relief requested in Paragraph A, permanently enjoin Gantry View and the persons identified in Paragraph A from using GANTRY VIEW SCHOOL, GVS, or any other mark, trade name, or designation confusingly similar to the GANTRY KIDS Marks in connection with after-school programs or summer camps;

C. Require Gantry View and all persons bound by the Court's injunction, including its officers and agents, to take all steps within their authority to cause the withdrawal of U.S. Trademark Application Serial No. 99542278 for GANTRY VIEW SCHOOL and to refrain from seeking registration of that mark on Gantry View's behalf or in furtherance of its Infringing Services;

D. Order Gantry View under 15 U.S.C. § 1116 to file with the Court and serve on the undersigned counsel within thirty (30) days after service of the injunction on Gantry View, a report in writing and under oath setting forth in detail the manner and form in which it has complied with paragraphs A through C above, as applicable;

E. Order Gantry View to account for its revenues, costs, and profits attributable to its unauthorized use of GANTRY VIEW SCHOOL, GVS, and any other infringing designation in connection with the Infringing Services;

F. Award Gantry Kids, pursuant to 15 U.S.C. § 1117(a), its actual damages and such profits of Gantry View as may be established and awarded in accordance with the principles of equity, together with any enhancement of damages or adjustment of profits that the Court determines appropriate under the circumstances;

G. Award Gantry Kids its costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a), this being an exceptional case;

H. Award Gantry Kids prejudgment interest to the extent permitted by law and post-judgment interest pursuant to 28 U.S.C. § 1961; and

I. Grant Gantry Kids such other and further relief as the Court may deem reasonable and just.

## **DEMAND FOR JURY TRIAL**

Gantry Kids hereby demands a jury trial on all claims and issues so triable.

Dated: Wilmington, North Carolina
November 23, 2026

TADDONIO LAW PLLC

By: /s/ Brian M. Taddonio
Brian M. Taddonio (BT-1409)
brian@taddonio.law
226 N. Front Street, #128
Wilmington, NC 28401
Telephone: (910) 701-0213

*Attorneys for Plaintiff,*
Kelber Coaching, LLC